# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2117
_____

Daniel Retz

*Plaintiff - Appellee*

v.

William Seaton

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: November 21, 2013
Filed: February 3, 2014
_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

In this lawsuit brought under 42 U.S.C. § 1983, Daniel Retz claimed that Omaha police detective William Seaton used excessive force when arresting him for disorderly conduct. After a three-day trial, the jury returned a verdict in Retz's favor,

and the district court[1] entered judgment.  Detective Seaton now appeals on three grounds.  For the reasons set forth below, we affirm.

## I. Background

On November 20, 2008, Retz reported his car stolen to the Bellevue Police Department.  Retz called 911 nine days later to advise authorities that his car had been identified in a particular Omaha parking lot.  Detective Seaton and two other Omaha police officers responded to the call and found Retz's ex-girlfriend, Emily Coufal, with the vehicle.  Soon thereafter, Retz arrived on the scene.  Concerned about a potential domestic violence escalation, Officer Adam Turnbull instructed Retz to sit in the back of a cruiser and to avoid contact with Coufal.  The officers released the car to Retz after citing Coufal for unauthorized use of a vehicle.  As Retz walked toward his car, he passed in front of the cruiser in which Coufal was detained, gestured with his middle finger, and mouthed the words "Fuck you."  According to Retz, Seaton responded: "Now you did it.  You're under arrest for disorderly conduct.  Put your hands on the hood."  Retz complied with these instructions.

When Seaton directed Retz to place his right arm behind his back for handcuffing,  Retz informed Seaton that he was unable to do so because of a recent rotator-cuff repair surgery.  Retz testified at trial that he said: "I can't.  I just had surgery.  I can't do it."  He also testified that Seaton responded: "I don't care.  I'll show you how far back it will go."  When Seaton pulled back Retz's right arm, the shoulder dislocated, and Retz fell to the ground in pain.  Officer Turnbull intervened and handcuffed Retz in front of his body.  Retz then called Seaton a "cocksucker." Retz testified that Seaton reacted by pushing Retz back onto the ground.  "Nobody calls me a cocksucker," Seaton said according to Retz's testimony.  Seaton added, "If

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

-2-

you're going to act like an animal, we're going to treat you like an animal." In their trial testimony, all three officers denied that Seaton threw Retz to the ground after being called a "cocksucker." They ticketed Retz for disorderly conduct and released him.

Retz originally brought suit against Detective Seaton in both his individual and official capacities. Although it was never received into evidence, Retz used Exhibit 30, an Internal Affairs investigation file documenting the department's investigation into the incident, to impeach Seaton and other officers with their prior inconsistent statements. Both Retz and Seaton testified that the investigation determined the claim to be "unsubstantiated." Later, while cross-examining Retz, Seaton sought to introduce Exhibit 112, a letter from the Omaha Chief of Police to Retz confirming that the allegation against Seaton had been found to be "not sustained." In a side-bar conference, Retz objected to the admission of Exhibit 112 on irrelevancy and hearsay grounds. The district court sustained the objection. Seaton argued that Exhibit 112 was essential to showing that the police department did not condone Seaton's activity in order to defend against Retz's official capacity claims. Retz responded by moving to dismiss the official capacity claims. The district court accepted the dismissal, and the objection to Exhibit 112 was again sustained. Seaton then objected to the dismissal of the official capacity claims due to "the unfairness of having all of [the] evidence come in about the Internal Affairs investigation based upon the official capacity [claim], and then dumping it like that." The district court overruled the objection to the dismissal.

Retz also elicited testimony from Officer Turnbull concerning whether the officers "could have just left the scene" rather than arrest Retz. Seaton objected, arguing: "What they could or could not have done is not the measure. There are all sorts of things they could have done. The measure is if what they did is reasonable." The district court overruled the objection "because [the officers] did choose to do what they did" and the inquiry was relevant to the "question of reasonableness."

-3-

In Defendant's Proposed Instruction No. 4, Seaton sought to instruct the jury that "[t]he Constitution . . . does not require the police to do the best job possible or choose the best response to a situation."  The district court rejected that proposed instruction, adopting instead the model instruction telling the jury not to rely on "the benefit of hindsight."

The jury awarded Retz damages in the amount of $31,505.23.  Seaton appeals, arguing the district court abused its discretion: (1) by allowing Retz to dismiss voluntarily his official capacity claim on the second day of trial; (2) by allowing Retz to elicit testimony regarding alternative courses of action available to Seaton; and (3) by rejecting Seaton's proposed jury instruction.

## II. Discussion

## A. Voluntary Dismissal of Official Capacity Claims

A district court's decision to allow a voluntary dismissal is reviewed for an abuse of discretion.  *Thatcher v. Hanover Ins. Group, Inc.*, 659 F.3d 1212, 1213 (8th Cir. 2011).  The following factors should be considered in determining whether to allow a voluntary dismissal: "whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants."  *Hamm v. Rhone–Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999).  On appeal, Seaton asserts that the official capacity claims allowed Retz to elicit otherwise inadmissible testimony early in the trial about the department's Internal Affairs investigation.  Seaton contends that the district court abused its discretion by allowing the voluntary dismissal of the official capacity claims because the dismissal rendered Exhibit 112 irrelevant.  He believes that Exhibit 112 should have been admitted in order to eliminate an inference that the department's investigation implied wrongdoing on the part of Seaton.

-4-

Seaton has not shown that the dismissal of the official capacity claims prejudiced him. Even if Retz had never brought the official capacity claims, he nevertheless would have been allowed to use Exhibit 30 to impeach the officers with their prior inconsistent statements contained in the Internal Affairs investigation file. *See* Fed. R. Evid. 613. And even if the district court had disallowed the voluntary dismissal of the official capacity claims, Exhibit 112 still would have been inadmissible as hearsay. *See* Fed. R. Evid. 801. Thus, the dismissal of the official capacity claims did not affect the admissibility of Exhibit 30 or that of Exhibit 112. Moreover, both Seaton and Retz testified to the content of Exhibit 112—that is, that the Internal Affairs investigation found Retz's claims to be unsubstantiated. *See S.E.C. v. Shanahan*, 646 F.3d 536, 548 (8th Cir. 2011) (holding that where excluded evidence would have been cumulative to other admitted evidence, any abuse of discretion in excluding such evidence is not prejudicial). As such, we find that Seaton has not shown any prejudice from the dismissal of the official capacity claims. Retz also offered a proper explanation for his desire to dismiss the official capacity claims when he observed that he was unable to introduce evidence adequate to support those claims. Therefore, the district court did not abuse its discretion in allowing Retz to voluntarily dismiss his official capacity claims.

## B. Testimony Regarding Alternative Courses of Action

A district court's decision to admit testimony is reviewed for an abuse of discretion. *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 689 (8th Cir. 2009). District courts enjoy "wide discretion in ruling on the admissibility of proffered evidence, and evidentiary rulings should only be overturned if there was a clear and prejudicial abuse of discretion." *Id.* at 689-90 (internal citations and quotation marks omitted). Seaton argues that the district court abused its discretion by allowing nine lines-of-questioning concerning allegedly better alternative courses of action that Seaton could have taken. Seaton only objected to one of these nine—the question concerning whether the officers "could have just left the scene." The district court

concluded ultimately that this inquiry was proper given that it was relevant to the "question of reasonableness." We agree.

The Supreme Court has established that determining the reasonableness of a particular use of force under the Fourth Amendment involves "careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Court suggested that this consideration of the totality of the circumstances "includ[es] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* This list of factors, introduced by the word "including," has been interpreted by several federal circuits to be non-exhaustive. *See Chew v. Gates*, 27 F.3d 1432, 1440 n.5 (9th Cir. 1994); *Hunter v. Dist. of Columbia*, 943 F.2d 69, 77 (D.C. Cir. 1991) *abrogated on other grounds by Atchinson v. Dist. of Columbia*, 73 F.3d 418, 421-22 (D.C. Cir. 1996); *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989). This interpretation is undoubtedly correct.

Among the factors that may, in appropriate circumstances, be considered within the totality of the circumstances is "the availability of alternative methods of capturing or subduing a suspect." *Chew*, 27 F.3d at 1440 n.5. The Supreme Court instructed in *Graham* that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." 490 U.S. at 396. Depending on the circumstances, the "perspective" of a reasonable officer may include consideration of alternative courses of action available at the time force was used. In other words, determination of whether the course chosen by the officer was objectively reasonable may involve consideration of the range of choices available on the scene at the time force was used.

Seaton observes that the Constitution "requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct

-6-

as judged by 20/20 hindsight vision." *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993) (citing *Graham*, 490 U.S. at 396).  Seaton argues that the rule established in *Graham* and *Cole* bars any consideration of alternative courses of action as irrelevant. This interpretation is incorrect.  In many situations, police officers may have a range of available alternative methods of capturing or subduing a suspect.  *Graham* and *Cole* establish that a police officer need not choose the most prudent course of conduct among the range of reasonable choices.  Those cases protect police officers from Monday-morning quarterbacking that would impose liability simply because the officers did not choose a better available method.  However, those cases do not preclude consideration of the range of available choices when such evidence is relevant and necessary to determining, as a threshold matter, whether the particular method selected was objectively reasonable.

Accordingly, we find no abuse of discretion in the district court's ruling on the question concerning whether the officers "could have just left the scene."  Because Seaton failed to object to the other eight lines-of-questioning complained of in briefing, we review them for plain error.  *United States v. NB*, 59 F.3d 771, 774 (8th Cir. 1995).  As these questions also explored alternative courses of action available to Seaton, we likewise find no error, much less plain error, for the reasons discussed above.

## C.  Proposed Jury Instruction

Finally, a district court's decision to reject a proposed jury instruction also is reviewed for an abuse of discretion.  *Eden Elec., Ltd. v. Amana Co.*, 370 F.3d 824, 827 (8th Cir. 2004).  A party "is not entitled to a particularly worded instruction." *United States v. Meads*, 479 F.3d 598, 601 (8th Cir. 2007) (quoting *United States v. Claxton*, 276 F.3d 420, 423 (8th Cir. 2002)).  Rather, "[t]he district court has broad discretion in formulating the jury instructions." *United States v. Johnson*, 278 F.3d 749, 751 (8th Cir. 2002).  "There is no abuse of discretion in denying a [party's] requested

-7-

instruction 'if the instruction[s] actually given by the trial court adequately and correctly cover[ ] the substance of the requested instruction.'" *Meads*, 479 F.3d at 601 (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 637 (8th Cir. 2004)).  "Our review is limited to a determination of whether the instructions fairly and accurately present the evidence and law to the jury given the issues in the case." *Eden Elec.*, 370 F.3d at 827.

Here, the district court used a modified version of instruction 4.40 from the Eighth Circuit Manual of Model Civil Jury Instructions.  The jury was instructed that, "[i]n determining whether the force was 'excessive,' [it] must consider . . . whether a reasonable officer on the scene, without the benefit of hindsight, would have used the same force under similar circumstances."  The jury also was instructed to "keep in mind that the decision about how much force to use often must be made in circumstances that are tense, uncertain, and rapidly changing."  Seaton contends this instruction inadequately conveyed the *Graham* and *Cole* rule that police officers are not required to choose the "most prudent course" available to them.  He instead proposed language making clear that "[t]he Constitution requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct."  He also would have instructed that "[t]he Constitution . . . does not require the police to do the best job possible or choose the best response to a situation."  While Seaton's proposed instruction does not misstate or misrepresent the law established in *Graham* and *Cole*, the model instruction used by the district court—which included the caution against using "hindsight"—fairly and accurately presented the law to the jury.  Moreover, the district court permitted Seaton to use his proposed instruction language during closing argument, which he did.  *United States v. Risch*, 87 F.3d 240, 242 (8th Cir. 1996) ("The instructions that were given provided [Seaton] the opportunity fully to present his theory of defense to the jury in closing argument.").  Accordingly, we find no abuse of discretion by the district court in its instruction of the jury.

-8-

## III.  Conclusion

For the reasons set forth above, we affirm.

_____

-9-